FILED IN CHAMBERS
U.S.D.C. Atlanta

SEP 1 3 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

ANTHONY L. ESTES,

        Petitioner,

v.

BRUCE CHAPMAN, WARDEN,

        Respondent.

CIVIL ACTION NO.

1:02-CV-1131-JEC

HABEAS CORPUS
28 U.S.C. § 2254

## ORDER AND OPINION

This case is presently before the Court on petitioner's 28 U.S.C. § 2254 Habeas Corpus Petition [1]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the Petition [1] should be **DENIED**.

## BACKGROUND

In 1996, petitioner was indicted on charges of kidnapping, false imprisonment, robbery, and simple battery. (Petition [1].) Petitioner pled not guilty, and had a jury trial in Paulding County Superior Court. (*Id.*) Petitioner was represented at trial by appointed counsel, Julie Cain. (*Id.* at 6.)

The jury convicted petitioner on all counts. (*Id.* at 1.) As a result of a prior rape conviction, petitioner was sentenced under

Georgia's recidivist statute. (*Id.*) He received a sentence of life without parole for the kidnapping charge, to be served concurrently with ten years for false imprisonment, ten years for robbery, and twelve months for simple battery. (Petition [1].)

Following his trial and sentencing, petitioner was appointed new counsel, Jason Shwiller. (*Id.* at 6.) Shwiller prepared a motion for new trial, in which he argued that: (1) petitioner's kidnapping conviction was not supported by the evidence presented at trial; (2) the trial court erred by referring to petitioner's prior rape conviction in the presence of the jury; and (3) petitioner's robbery conviction was not supported by the evidence at trial. (State Habeas Order at 17, attached to Answer-Response [3] at Ex. 2A.) The trial court merged petitioner's convictions for false imprisonment and kidnapping, and vacated the concurrent ten-year sentence for false imprisonment, but otherwise denied petitioner's motion. (*Id.*)

Petitioner, again represented by Shwiller, directly appealed to the Georgia Court of Appeals. (Petition [1].) On August 31, 1998, the Georgia Court of Appeals issued an opinion affirming petitioner's conviction and sentence. *Estes v. State,* 234 Ga. App. 150, 505 S.E. 2d 840 (1998). In its opinion, the Court of Appeals found that the evidence presented at trial was sufficient to establish that on February 7, 1996:

2

[The victim] Heidi Clark was working the late shift at a Wal-Mart store in Hiram, Georgia.  At about 1:25 a.m., she parked her truck in the parking lot, got out of the vehicle, and saw [petitioner] running toward her. [Petitioner] told Clark to get back into the truck and grabbed her by the throat and arm. Clark testified that [petitioner] "pulled [her] towards the door, and he started to reach for it, and [she] just--that's when [she] tried to start getting away."  She testified that Clark "moved [her] a little towards the door," and that she took a single step at that time.  After a brief struggle, she was able to escape and run away from [petitioner].

(*Id.* at 151, 841.)

On March 15, 1999, petitioner filed a *pro se* petition for habeas corpus in the Hancock County Superior Court, raising fifteen grounds for relief.  (State Habeas Petition, attached to Answer-Response [3] at Ex. 1.)  The state habeas court held an evidentiary hearing during which it heard argument on each of petitioner's grounds, as well as testimony from Shwiller.  (*Id.* at Exs. 2A and 2B.)  Following the hearing, the court denied relief on all of petitioner's grounds. (*Id.* at Ex. 3.)  The Georgia Supreme Court denied petitioner's application for a certificate of probable cause to appeal the state habeas court's ruling.  (*Id.* at Ex. 5.)

Petitioner filed the instant federal petition for habeas corpus on April 26, 2002.  (Petition [1].)  The State responded with a motion to dismiss the petition as untimely.  (Answer-Response [3].) Magistrate Judge Feldman recommended that the petition be dismissed because it was not filed within the one-year statute of limitations in 28 U.S.C. § 2244(d).  (Report and Recommendation ("R&R") [9].)

3

This Court adopted the Magistrate's R&R, and dismissed the petition as untimely.  (Order [12].)   The Court granted a certificate of appealability, however, because the timeliness issue required resolution of "a novel question concerning Georgia law."   (Order [17].)

On appeal, the Eleventh Circuit reversed the Court's decision to dismiss the petition as untimely.  (Eleventh Circuit Mandate [24].)   The Circuit Court found that petitioner's previously filed motion to vacate his sentence was properly filed in the trial court, and thus tolled the limitations period under 28 U.S.C. § 2244(d). (*Id.*)  Accordingly, the Circuit Court concluded that the petition was timely, and remanded the case to this Court for a determination on the merits.  (*Id.*)

The Court has reviewed the pleadings and exhibits and finds that the record contains sufficient facts upon which the issues may be properly resolved.  As petitioner has made no showing as required by 28 U.S.C. § 2254(e)(2), no federal evidentiary hearing is permitted, and the case is now ready for disposition.

## DISCUSSION

I.   **Petitioner's Grounds for Relief**

Petitioner asserts the following grounds for federal habeas relief:

4

(1)   Petitioner's appellate counsel was ineffective in failing to raise a claim of ineffective assistance of trial counsel.

(2)   Petitioner was denied effective assistance of trial counsel when counsel failed to raise a claim that Georgia's recidivist statute, O.C.G.A. § 17-10-7(b)(2), is unconstitutional because it violates the ex post facto clause.

(3)   Petitioner was denied effective assistance of trial counsel when counsel failed to raise a claim that Georgia's kidnapping statute, O.C.G.A. § 16-5-40, is unconstitutional because it is vague.

(4)   Petitioner was denied effective assistance of trial counsel when she failed to present an alibi defense.

(5)   Petitioner was denied effective assistance of appellate counsel when counsel failed to raise on appeal that the trial court erroneously denied his motion to suppress identification evidence.

(6)   Petitioner was denied effective assistance of appellate counsel when counsel failed to raise on appeal that the trial court erroneously denied his motion for directed verdict on the robbery charge.

(7)   Petitioner was denied the effective assistance of trial counsel when counsel failed to present an "attempt" or "abandonment" defense.

(Petition [1] at 5-10.)   Petitioner raised all of these grounds in his state habeas petition.   (State Habeas Petition, attached to Answer-Response [3] at Ex. 1.)

## II.   Standard of Review

Pursuant to 28 U.S.C. § 2254, a federal court may issue a writ of habeas corpus on behalf of a person held in custody pursuant to

5

a judgment of a state court if that person is held in violation of his rights under federal law.  28 U.S.C. § 2254(a).  This power is limited, however.  Under 28 U.S.C. § 2254(d), a federal court may not grant habeas relief for claims previously adjudicated on the merits by state courts unless the state court's decision was:  1) contrary to, or involved an unreasonable application of, clearly established federal law; or 2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254 (d).  Moreover, a state court's factual determinations are "presumed to be correct" unless rebutted "by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  A petitioner can only overcome this presumption by presenting "clear and convincing evidence" that the state court determinations were erroneous.  (*Id.*)

The Supreme Court explained how federal courts should apply the above standard in *Williams v. Taylor,* 529 U.S. 362 (2000).  First, the federal court must determine the applicable "clearly established Federal law, as determined by the Supreme Court of the United States."  (*Id.* at 404-05.)  *See* 28 U.S.C. § 2254(d)(1).  Next, the federal habeas court must ascertain whether the state court decision is "contrary to" that clearly established law by determining if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court reached a result different from the Supreme Court on a set of materially

6

indistinguishable facts. (*Id.* at 412-13.) *See also Early v. Packer,* 537 U.S. 3, 8 (2002)(recognizing that a state court decision is not contrary to federal law simply because it does not cite Supreme Court authority; the relevant inquiry is whether the reasoning or the result of the state decision contradicts that authority).

If the federal court determines that the state court decision is not contrary to clearly established federal law, the court must then determine whether the state court decision was an "unreasonable application" of clearly established federal law, that is, whether the state court identified the correct governing legal principle from the Supreme Court's decisions, but unreasonably applied that principle to the facts of the case. *Williams,* 529 U.S. at 412. This reasonableness determination is objective, and the federal court may not issue a writ of habeas corpus simply because it concludes in its independent judgment that the state court was erroneous or incorrect. *Id.* at 411. As long as the state court's application was objectively reasonable, there is no basis for granting habeas relief. (*Id.*)

## III. **Ineffective Assistance of Trial Counsel**

In Grounds 2, 3, 4, and 7, petitioner contends that his trial counsel provided ineffective assistance by failing to: (1) challenge the constitutionality of O.C.G.A. § 17-10-7; (2) challenge the constitutionality of O.C.G.A. § 16-5-40; (3) present an alibi or impossibility defense; and (4) present an "attempt" or "abandonment"

7

defense.   (Petition [1] at 1-11.)   The state habeas court concluded that petitioner's claims for ineffective assistance of trial counsel were procedurally defaulted.   (State Habeas Order at 2-3.)   This Court concludes that this ruling precludes federal habeas review of petitioner's claims concerning ineffective assistance of trial counsel.

Under Georgia law, a defendant must raise an ineffective assistance claim "at the earliest practicable moment." *White v. Kelso,* 261 Ga. 32, 401 S.E. 2d 733 (1991).   Because an attorney cannot reasonably be expected to assert his own ineffectiveness, the earliest practicable moment generally coincides with the first appearance of new counsel.   (*Id.*)   When a defendant is represented by new counsel on an amended motion for new trial, any claims of ineffectiveness of previous counsel must be raised in that motion. (*Id.*) *See also Thompson v. State,* 257 Ga. 386, 359 S.E.2d 664 (1987).

In this case, Shwiller was appointed to represent petitioner shortly after his trial.   (State Habeas Order at 2.)   Shwiller prepared petitioner's motion for new trial and appeal, but failed to raise an ineffectiveness claim at either of these proceedings.   (*Id.*) The state habeas court thus correctly concluded that petitioner's claims based on ineffective assistance of trial counsel were procedurally defaulted under state law.   (*Id.*)

Where a state prisoner has defaulted his federal claims in state

court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law.[1]   *Coleman v. Thompson,* 501 U.S. 722, 750 (1991).   *See also Baldwin v. Johnson,* 152 F.3d 1304, 1317-18 (11th Cir. 1998)(holding that a petitioner is not entitled to federal habeas review of a claim that is defaulted under state law because it was not raised at trial or on direct appeal) and *Agan v. Vaughn,* 119 F.3d 1538, 1548 (11th Cir. 1997)("A state court's determination that a claim is barred from review in state court because of the petitioner's failure to comply with state law procedures for presenting the claim precludes federal habeas review of that claim").

Petitioner does not attempt to show cause or prejudice, and the Court can glean no evidence of cause or prejudice from the record.[2]

---

[1]   A petitioner can also obtain federal review of a procedurally defaulted claim by demonstrating that failure to consider the claim will result in a "'fundamental miscarriage of justice.'"   *Coleman,* 501 U.S. at 750.   The record in this case does not support the "fundamental miscarriage of justice" exception, which is concerned with actual innocence.   *See Sawyer v. Whitley,* 505 U.S. 333, 339 (1992).

[2]   Attorney error that rises to the level of ineffective assistance of counsel, and that results in a procedural default, can constitute cause.   *Coleman,* 501 U.S. at 754.   However, as discussed *infra,* appellate counsel's failure to assert an ineffective assistance claim did not constitute ineffective assistance of counsel.

AO 72A
(Rev.8/82)

Accordingly, federal habeas review of petitioner's ineffective assistance of trial counsel claims is barred.

## IV.   Ineffective Assistance of Appellate Counsel

In Grounds 1, 5, and 6, petitioner contends that his appellate counsel provided constitutionally deficient assistance. (Petition [1] at 1-10.)   In Ground 1, petitioner attempts to avoid the procedural default discussed above by asserting that appellate counsel's representation was constitutionally deficient because counsel failed to raise a claim for ineffective assistance of trial counsel based on trial counsel's failure to: (1) challenge the constitutionality of Georgia's recidivist statute, O.C.G.A. § 17-10-7(b)(2); (2) challenge the constitutionality of Georgia's kidnapping statute, O.C.G.A. § 16-5-40; (3) present an alibi defense; and (4) present an "attempt" or "abandonment" defense. (*Id.* at 2.)   In Ground 5, petitioner contends that appellate counsel was deficient in failing to appeal the trial court's denial of petitioner's motion to suppress identification testimony. (*Id.* at 7.)   In Ground 6, petitioner contends that appellate counsel unreasonably failed to appeal the trial court's denial of petitioner's motion for directed verdict on the robbery charge. (*Id.* at 7-8.)

The standard for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). *Hall v. Head,* 310 F.3d 683, 691 (11th Cir. 2002)(applying

AO 72A
(Rev.8/82)

*Strickland*).  To prevail under *Strickland*, petitioner must show that: (1) his counsel's performance failed to meet the standard of a reasonably competent attorney and (2) the deficient performance prejudiced his defense.  (*Id.*)  *See also McNair v. Campbell,* 416 F.3d 1291, 1301 (11th Cir. 2005)(applying the *Strickland* standard in a habeas corpus case).  The Court may "dispose of ineffectiveness claims on either of its two grounds." *Atkins v. Singletary,* 965 F.2d 952, 959 (11th Cir. 1992).  Moreover, "[s]crutiny of counsel's performance is highly deferential, and the burden is on the [petitioner] to show that counsel's performance was unreasonable." *McNair,* 416 F.3d at 1301.

The state habeas court cited *Strickland,* and correctly identified the elements of a successful claim for ineffective assistance of counsel under the *Strickland* standard.  (State Habeas Order at 8-10.)  The court stated:

> In order to establish a claim of ineffective assistance of counsel, a convicted defendant must satisfy the two-part test articulated in *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984).  First, the defendant must identify serious deficiencies in counsel's performance.  *Id.*  Secondly, the defendant must show that he was prejudiced by th[e] deficien[t] performance.

(*Id.* at 8.)  Petitioner has not cited, and the Court has not found, any materially indistinguishable cases in which the Supreme Court found that counsel had been ineffective.  The state court's decision thus "easily satisfies the 'contrary to' clause of § 2254 (d)(1)."

11

*Breedlove v. Moore,* 279 F.3d 952, 962-63 (11th Cir. 2002).

Applying *Strickland,* the state court found that Shwiller had prepared for petitioner's appeal by reading the record and trial transcript numerous times, reviewing trial counsel's legal research, and performing his own legal research, and extensively discussing the case with trial counsel, the district attorney who prosecuted the case, and petitioner. (State Habeas Order at 4-5.) Based on his factual investigation and legal research, Shwiller determined that one issue in the case was particularly strong: the lack of evidence on the asportation element of petitioner's kidnapping conviction. (*Id.* at 5.) The state court concluded that Shwiller provided constitutionally adequate representation when he focused on this issue, to the exclusion of the numerous issues raised by petitioner, in his appeal. (*Id.*) The Court finds that this conclusion was a reasonable application of *Strickland.*

As an initial matter, the state court correctly recognized that Shwiller did not have "a duty to advance every non-frivolous argument that could be made." (*Id.* at 9 (citing *Jones v. Barnes,* 463 U.S. 745, 751-54 (1983).) As the Supreme Court explained in *Jones:*

> Most cases present only one, two, or three significant questions.... Usually, ... if you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention.

*Jones,* 463 U.S. at 752. For this reason, attorneys are encouraged

12

to "'winnow[] out weaker arguments on appeal and focus[] on' those more likely to prevail." *Smith v. Murray,* 477 U.S. 527, 536 (1986). The state habeas court thus reasonably concluded that Shwiller's failure to raise all of the arguments asserted by petitioner, even if some of those arguments were colorable, did not constitute ineffective assistance of counsel. (*Id.*)

Addressing each of petitioner's asserted grounds in more detail, the state court concluded that:

(1)   Appellate counsel was not ineffective in failing to argue that trial counsel had been ineffective for not challenging the constitutionality of O.C.G.A. § 17-10-7-7(b) under the ex post facto clause of the United States Constitution. Georgia case law has clearly held that O.C.G.A. § 17-10-7 does not violate the ex post facto clause. *Moore v. Ray,* 269 Ga. 457, 499 S.E. 2d 636 (1998); *Johnson v. State,* 229 Ga. App. 400, 493 S.E. 2d 926 (1997). [Appellate counsel's] decision not to advance this argument therefore did not constitute attorney error.

(2)   [Appellate counsel] was not ineffective in failing to argue that trial counsel should have challenged the constitutionality of the kidnapping statute and was ineffective for not having done so. The Georgia kidnapping statute under which petitioner was indicted, O.C.G.A. § 16-5-40, is not unconstitutional. *See Albert v. State,* 180 Ga. App. 779, 350 S.E. 2d 490 (1986). [Appellate counsel] was therefore not constitutionally ineffective in failing to raise this argument.

(3)   [Appellate counsel] was not ineffective in failing to challenge trial counsel's failure to raise a defense of alibi and/or impossibility at trial. [Appellate counsel] considered but

13

decided against raising this argument because there was no corroboration for either of these defenses. [Appellate counsel] concluded that trial counsel had not been ineffective in failing to argue these defenses at trial. [Appellate counsel] was not ineffective in failing to raise this argument.

(4)   [Appellate counsel] was not ineffective in failing to argue that trial counsel was ineffective in not raising the defense of [attempt or] abandonment at trial. . . . [Appellate counsel] felt that, although he may have disagreed with some of trial counsel's tactical decisions, her performance had been constitutionally effective.   He therefore decided not to raise any claims of ineffective assistance of trial counsel, including any claim based on her failure to raise the defense of abandonment. [Appellate counsel's] decision not to argue that trial counsel should have raised the defense of abandonment at trial does not constitute attorney error.

(5)   [Appellate counsel] was not ineffective in failing to raise [the identification] issue on appeal. [Appellate counsel] considered arguing on appeal that the line-up procedure had been impermissibly suggestive and should have been suppressed, but decided against raising this argument after his research indicated that it was not supported by the law.  This Court finds that his decision not to raise this argument on appeal does not constitute attorney error.

(6)   This Court finds . . . that after extensively reviewing the transcript and researching possible errors, [appellate counsel] concluded that there was no basis for . . . the directed verdict as to the robbery charge.  His decision not to raise this argument on appeal therefore does not constitute attorney error.

(State Habeas Order at 12-17.)

As is apparent from the above discussion, the state court found

14

that most of the issues that Shwiller neglected to raise on appeal were legally or factually untenable, and that none of those issues was sufficient to support an ineffective assistance of counsel claim. (*Id.*)  Having reviewed the record and the applicable law, the Court determines that the state court's conclusion was not only reasonable, but correct.

### A.   Georgia's recidivist statute is constitutional.

Petitioner's contention that Georgia's recidivist statute violates the ex post facto clause is contrary to state and federal law.   *See Moore v. Ray,* 269 Ga. 457, 499 S.E. 2d 636 (1998)(concluding that O.C.G.A. § 17-10-7 is constitutional) and *United States v. Harden,* 37 F.3d 595, 600 (11th Cir. 1994) (upholding the mandatory life sentence of a repeat felony drug offender).   As the Eleventh Circuit explained in *Harden:*

> Obviously the punishment for *a past, prior offense* cannot be subsequently increased ex post facto.   But the punishment for the current offense in the case at bar can appropriately be enhanced and made more severe because the current offense is not the appellant's first violation of the criminal law, but he is a recidivist or "repeat offender."

*Harden,* 37 F.3d at 600 (emphasis in original)(citing *United States v. Adams,* 914 F.2d 1404, 1407 (10th Cir. 1990)).   Relying on similar reasoning, the Georgia Supreme Court expressly concluded in *Moore* that § 17-10-7 "does not constitute application of an ex post facto law." *Moore,* 269 Ga. at 458, 499 S.E. 2d at 637.   *See also Parke v.*

15

*Raley,* 506 U.S. 20, 27 (1992) (noting that the Supreme Court has "repeatedly upheld recidivism statutes 'against contentions that they violate constitutional strictures dealing with . . . ex post facto laws'") (quoting *Spencer v. Texas,* 385 U.S. 554, 560 (1967)).

### B.   Georgia's kidnapping statute is constitutional.

Petitioner's argument concerning Georgia's kidnapping statute is similarly meritless.  *See Braley v. State,* 276 Ga. 47, 49, 572 S.E. 2d 583, 590 (2002) (finding that O.C.G.A. § 16-5-40 is not unconstitutionally vague) and *United States v. Eckhardt,* 466 F.3d 938, 944 (11th Cir. 2006) (upholding a federal statute prohibiting "annoying, abusive, harassing, or threatening telephone calls).   A criminal statute is sufficiently clear if "'the meaning of the words used to describe the [impermissible] conduct can be ascertained fairly by reference to judicial decisions, common law, dictionaries, and the words themselves because they possess a common and generally accepted meaning.'" *Eckhardt,* 466 F.3d at 944 (citing *City of Chicago v. Morales,* 527 U.S. 41, 56 (1999)).   Georgia's kidnapping statute easily satisfies that standard.[3]

To the extent the statute is unclear as to the "asportation" element, Georgia courts have "cure[d] [the] law's vagueness by

---

[3]   The statute provides that: "A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will." O.C.G.A. § 16-5-40.

statutory interpretation." *High Ol' Times, Inc. V. Busbee,* 673 F.2d 1225, 1229 (11th Cir. 1982). Georgia case law clearly established, long before petitioner encountered Heidi Clark in the Wal-Mart parking lot in 1996, that "[t]he distance [a] victim is carried is not material" to whether a kidnapping has occurred. *McGinnis v. State,* 183 Ga. App. 17, 18, 358 S.E.2d 269 (1987). It was apparent as early as 1974 that "[a]ny carrying away is sufficient" to support a conviction for kidnapping under § 16-5-40. (*Id.*) (citing *Brown v. State,* 132 Ga. App. 399, 402, 208 S.E.2d 183 (1974)). *See also Giddens v. State,* 190 Ga. App. 723, 724, 380 S.E. 2d 274 (1989)("There is no minimum requirement as to the distance. 'That asportation was of short duration is without legal significance.'").

### C.   **The record does not support an alibi defense.**

As to petitioner's alibi defense, Shwiller testified at the state habeas hearing that the record did not support such a defense. (State Habeas Tr. at 24, attached to Answer-Response [3] at Ex. 2A.) Having reviewed the record and trial transcript, the Court agrees.

The only witness who could potentially support an alibi defense was petitioner's friend Randy Maxwell.  Maxwell was staying at petitioner's home at the time of the crime. (Trial Tr. at 36, attached to Answer-Response [3] at Ex. 2B.) He testified that on the night of the crime, petitioner came home, where Maxwell was sleeping, at "about 1:00" in the morning. (*Id.*) He stated that after about

17

fifteen or twenty minutes, he and petitioner walked to a nearby gas station to get gas, at which time Maxwell and petitioner encountered the police officers investigating Clark's assault. (*Id.*)

Petitioner contends that Maxwell's testimony establishes an alibi for the crime because Clark testified that the crime occurred around 1:25 a.m. (Petition [1] at 6.) As Shwiller noted at the state habeas hearing, however, petitioner's alibi claim was weak because he did not have a witness to corroborate Maxwell's testimony. (State Habeas Hearing Tr. at 24.) Furthermore, Maxwell did not state the exact time that petitioner arrived home, and it would have been difficult for him to remember the exact time when he testified at trial, nearly nine months after the crime was committed. (Trial Tr. at 36.) To make matters worse, Maxwell also testified that when petitioner arrived at the house he told Maxwell that he had "just tried to jack some lady's purse." (*Id.* at 37.) Thus, Maxwell's testimony suggests that petitioner was with Maxwell immediately after, but not during, the crime. Given the state of the record, trial counsel's failure to assert an alibi defense did not constitute ineffective assistance of counsel.

### D.   The trial court correctly denied petitioner's motion to suppress identification testimony.

"When reviewing the denial of a motion to suppress, [the Georgia Court of Appeals] construe[s] the evidence presented both at the

18

suppression hearing and at trial in a light favorable to upholding the trial court's findings and judgment." *Thomas v. State,* 269 Ga. App. 116, 603 S.E. 2d 689 (2004). So viewed, the evidence shows that around 1:30 a.m. on February 7, 1996, Heidi Clark arrived at the Hiram Wal-Mart, where she worked the night shift. (Trial Tr. at 48-49.) She parked in a well-lit area in the Wal-Mart parking lot. (*Id.* at 49-50.) As she was exiting her truck, she saw a man running towards her. (*Id.* at 50.) The man grabbed her throat and arm, and told her to get back in the truck. (*Id.*) Clark struggled with the man for ten to fifteen seconds, during which time she was able to get a good look at his face and clothing. (*Id.* at 52.) She then threw her purse and lunch bag at him and ran away. (Trial Tr. at 52.)

The Hiram police received a report of the above incident, and Officer Lynn Schmidt was dispatched to the scene of the crime at approximately 1:30 a.m. (*Id.* at 98.) When Schmidt arrived at the Wal-Mart, he was met by Clark. (*Id.* at 99.) Clark described her attacker as a white man wearing a blue plaid flannel shirt with pink stripes. (*Id.* at 55.) She later told Schmidt that her attacker might have been "light skinned--possibly a Hispanic or Puerto Rican." (*Id.* at 100.)

While Schmidt was investigating the scene, Wal-Mart's security guard George Housman alerted him to a car in the parking lot that did not belong to any employees. (Trial Tr. at 100.) As Schmidt was

19

checking out the car, petitioner walked towards Schmidt and identified the car as belonging to him. (*Id.* at 101.) Schmidt noticed that petitioner was black, but that he was light-skinned, and that his clothes matched Clark's description. (*Id.*) He asked petitioner what he was doing in the area, and petitioner told him that he had run out of gas and had gone to the gas station. (*Id.*) Schmidt checked the car, and found that it was not out of gas. (*Id.* at 102.) He also noticed that petitioner's gas can was still in his car, although petitioner had already been and was walking from the gas station. (Trial Tr. at 102.) At that point, Schmidt asked petitioner to sit in the back of his patrol car. (*Id.*) He then asked Clark, who was waiting in the Wal-Mart break room, to come outside and "look at someone." (*Id.* at 58.)

When Clark came outside, she saw petitioner sitting in the back of Schmidt's patrol car. (*Id.*) As soon as Clark saw petitioner, approximately thirty minutes after the crime, she became hysterical and identified petitioner as her attacker. (*Id.* at 58, 103.) Clark testified at trial that she was positive when she saw petitioner in the back of the patrol car, and that she remained positive at the time of trial, that petitioner was the man who attacked her. (*Id.* at 58.)

Assessing the admissibility of identification evidence, Georgia courts apply a two-part test:

20

> First, [they] determine whether the identification procedure
> was impermissibly suggestive.  If it was, [they] then consider
> the totality of the circumstances to determine whether a very
> substantial   likelihood   existed   of   irreparable
> misidentification.   In making this determination, [they]
> consider the witness' opportunity to view the suspect at the
> time of the offense, the witness' degree of attention, the
> accuracy of the witness' prior description, the witness' level
> of certainty, and the length of time between the crime and the
> identification.

*Thomas,* 269 Ga. App. at 117-18, 603 S.E. 2d at 690-91.[4]

Assuming the procedure used to identify petitioner was

impermissibly suggestive because it involved a one-on-one show up

with petitioner in the back of a patrol car, petitioner had to show

a   "very   substantial   likelihood   existed   of   irreparable

misidentification" to win this issue on appeal.  (*Id.*)  As discussed

above, testimony at trial established that Clark engaged in a ten to

fifteen second face-to-face struggle with petitioner in a well-lit

area, during which she had ample opportunity to view his face.  Clark

was presumably alert and attentive during the struggle, as she was

trying to avoid being forced into her truck with the man.   She

positively identified petitioner approximately thirty minutes after

the crime, at which time she became hysterical.   She expressed no

doubt either on the night of the crime or at trial that petitioner

was her attacker.   Finally, although she incorrectly described

---

[4]   This test, as well as the reliability factors, are derived
from the United States Supreme Court's decision in *Neil v. Biggers,*
409 U.S. 188, 199-200 (1972).

AO 72A
(Rev.8/82)

petitioner as a white or possibly Hispanic or Puerto Rican male, in all other respects her description was accurate. As to petitioner's skin color, there was evidence at trial that he was a light-skinned black male, who could have been mistaken for a Hispanic male. (Trial Tr. at 55, 103-04.) Thus, as Shwiller correctly recognized, the record does not support an appeal on the identification issue.

### E. The trial court correctly denied petitioner's motion for directed verdict on the robbery charge.

Petitioner's argument concerning his robbery charge is also foreclosed by the evidence in the record. Pursuant to O.C.G.A. § 16-8-40:

> (a) A person commits the offense of robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another:
>
>> (1) By use of force;
>>
>> (2) By intimidation, by the use of threat or coercion, or by placing such person in fear of immediate serious bodily injury to himself or to another; or
>>
>> (3) By sudden snatching.

O.C.G.A. § 16-8-40(a). Petitioner filed a motion for directed verdict on the robbery charge at the close of trial, which the trial court denied. (Petition [1] at 8.) Petitioner contends that the denial was in error, which Shwiller should have raised on appeal. (*Id.*) Specifically, petitioner argues that there was no evidence of "intent to commit theft" as required by the statute. (*Id.*)

22

Petitioner does not deny that Clark's attacker took her lunch bag. (Trial Tr. at 53.) It is well-established that a jury is permitted to infer intent from "the doing of the wrongful or fraudulent or illegal act. . . ." *United States v. Chiantese*, 560 F.2d 1244, 1246-47 (5th Cir. 1977)(citing *Agnew v. United States*, 165 U.S. 36 (1897)).[5] In addition, petitioner's friend Danny Weddington testified that he saw petitioner on the day of the crime, and that petitioner told him he was "going to rob somebody." (Trial Tr. at 30.) Although Weddington believed at the time that petitioner was joking, his testimony provides evidence of intent on the part of petitioner to commit theft. Given this evidence, Shwiller's failure to appeal petitioner's robbery conviction was reasonable.

> **F.  Trial counsel's failure to request a charge on attempted kidnapping did not constitute ineffective assistance of counsel.**

Petitioner contends that the evidence supported a conviction for attempted kidnapping, because he abandoned his efforts to abduct the victim.[6] (Petition [1] at 10.) Petitioner believes that the jury

---

[5]  Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[6]  The state habeas court reviewed this claim as one alleging that trial counsel should have raised a defense of abandonment. (State Habeas Order at 16-17.) The analysis is the same, regardless of how the issue is framed.

23

would have only convicted him of attempted kidnapping if trial counsel had raised this issue, or requested a charge on the lesser included charge of attempt. (*Id.*) He argues that trial counsel's failure to do so constituted ineffective assistance of counsel, and that appellate counsel's failure to raise the issue on appeal also constituted ineffective assistance of counsel. (*Id.*)

Shwiller testified at the state habeas hearing that during the course of preparing petitioner's appeal, he had extensive discussions with trial counsel concerning her defense strategy, which was built around a "mistaken identity" theory. (State Habeas Tr. at 16.) Trial counsel did not believe that petitioner would be convicted of kidnapping, and she thought that he had a good chance of a complete acquittal, based on the evidence in the record. (*Id.* at 20.) However, she thought it was likely that petitioner would be convicted of attempted kidnapping if she requested a charge on the lesser included offense. (*Id.*) As summarized by Shwiller:

> Her trial strategy was if we charge criminal attempt and hedge our bets, it's more likely than not that [petitioner] would be convicted of some kind of crime. What she wanted to do was force the kidnapping issue to either result in a guilty verdict or a not guilty verdict.

(*Id.*) Although Shwiller did not agree with trial counsel's strategy, he recognized that it was a tactical decision that did not constitute ineffective assistance of counsel. (*Id.*)

Under the circumstances, Shwiller's assessment was reasonable.

24

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland,* 466 U.S. at 690. *See also Thomas v. Zant,* 697 F.2d 977, 986 (11th Cir. 1983) ("When an attorney makes a strategic choice after satisfying [the] rigorous and extensive duty to investigate, courts will seldom if ever find that the choice was the result of ineffective assistance of counsel.") and *Dingle v. Sec'y for Dep't of Corr.,* 480 F.3d 1092, 1099 (11th Cir. 2007)(noting that courts "give great deference to choices dictated by reasonable strategy"). Based on the evidence, trial counsel's strategy was well "within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. Appellate counsel was therefore not deficient in failing to raise this issue, which was not likely to succeed.

In addition, to prevail on this claim, petitioner must show that, if a jury instruction on attempt had been given, "the result of his trial would have been different." *Smelcher v. Attorney Gen. of Alabama,* 947 F.2d 1472, 1475 (11th Cir. 1991)(holding that an attorney's failure to request a charge on sexual misconduct when defendant was charged with rape did not constitute ineffective assistance of counsel). Petitioner has not shown that the evidence was insufficient to support his kidnapping conviction. Thus, he can only speculate as to what verdict the jury would have returned if they had been instructed on attempted kidnapping. Accordingly, it

25

was neither unreasonable nor prejudicial for appellate counsel not to pursue this claim of ineffective assistance of trial counsel.

### CONCLUSION

The heavy burden of 28 U.S.C. § 2254(d) rests with petitioner. *See Woodford v. Visciotti,* 537 U.S. 19, 25 (2002) and *Schwab v. Crosby,* 451 F.3d 1308, 1329 (11th Cir. 2006). Petitioner has failed to demonstrate that the state habeas court's conclusions regarding his claims of ineffective assistance of appellate counsel were "contrary to, or involved an unreasonable application of, clearly established Federal law" and he has not argued, nor does it appear from the record, that the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Accordingly, the Court **DENIES** petitioner's Petition for Habeas Corpus [1].


SO ORDERED, this __13__ day of September, 2007.


_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

26